# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

SHERRI MARSH,

    Plaintiff,

vs.                                  CASE NO. CV-11-J-827-NE

WAL-MART STORES, INC.,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment, memorandum and evidence in support of said motion (docs. 9 and 10), to which the plaintiff filed a response and further evidence (docs. 12 and 13) and the defendant thereafter filed a reply (doc. 16). The defendant also filed a request for oral argument (doc. 11). The court being of the opinion that oral argument will not be of substantial assistance to the court, said request is **DENIED.**

### I. Factual Background

Plaintiff commenced this action by filing a complaint in the Circuit Court of Limestone County, Alabama, alleging that she fell on a "hazardous substance" in defendant's business and suffered fractures in her foot and ankle as well as other injuries. Complaint at ¶¶ 7-8; plaintiff depo. at 37. This case was removed based on

diversity jurisdiction (doc. 1).  The plaintiff brings claims for negligence and wanton conduct under state law.

On the date in question, November 14, 2008, the plaintiff and her husband, Keith Marsh, went to the defendant store in the evening to shop for groceries.  Keith Marsh depo. at 16-17.  Prior to this injury, the plaintiff had surgery on her back in May of 2008.  Plaintiff depo. at 58.  She had been doing well and returned to her ordinary activities, but took up to four Percocet a day for pain.  *Id.,* at 55-58, 136.  The plaintiff does not recall how many, if any, Percocet she had taken on the day in question.  *Id.*, at 144.

On the evening in question, the plaintiff and her husband were on the aisle with freezer bags and other paper goods.  Plaintiff depo. at 60; K. Marsh depo. at 19-20.  There is also dish detergent on that aisle.  K. Marsh depo. at 19.  Neither she nor her husband saw any customers or store employees on the paper goods aisle when they entered it.  Plaintiff depo. at 69-70; K. Marsh depo. at 23-24.  There was nothing that indicated a problem on that aisle and nothing was blocking her view.  Plaintiff depo. at 70.  Her husband did not look at the floor.  K. Marsh depo. at 26.  When she was more than halfway down the aisle, she slipped.  Plaintiff depo. at 72, 74.  The plaintiff was reaching for a box of freezer bags when she fell.  Plaintiff depo. at 75.

The plaintiff does not remember exactly how she fell.  Plaintiff depo. at 83-85.  All she remembers is that she was in very bad pain.  *Id.*, at 85, 108.  She ended up

lying on the floor on her side. *Id.*, at 86. The plaintiff never saw anything on the floor, but "[o]ne of the ladies that worked there came over and started cleaning it off of my feet, my shoes." *Id.*, at 87. The plaintiff did not get anything on her clothes but did see that what the lady wiped off her shoes was a light bluish greenish colored fluid. *Id.*, at 87-88, 104. She never looked at the floor to see how much liquid was there. *Id.*, at 89; 103. She thinks it may have been detergent. *Id.*, at 89. She does not know if she was standing in the liquid in question, whether it was a small or large puddle, where it was on the floor, and only had the liquid on the bottom of her shoes. *Id.*, at 101-103, 105.

Keith Marsh never saw any substance on the floor. K. Marsh depo. at 26-27. He heard his wife holler and saw her falling. *Id.*, at 30. Although he did not look at the floor right then, when he did look, he saw a "little streak of ... a faint blue, blue-green maybe, maybe had a little light green tint to it or blue and I saw where, you know, her feet had slid through it." *Id.*, at 33. When he saw the streak of liquid, his wife was a foot or two away from it. *Id.*, at 36. The plaintiff agreed that had she been looking for such a spill she could have seen it, but she never looked. Plaintiff depo. at 99, 147.

The plaintiff saw no container that would have had such a liquid in it, and agreed that laundry detergent is not sold on that aisle. Plaintiff depo. at 106; *see also* K. Marsh depo. at 49-50. However, plaintiff's husband thought the liquid appeared

to be laundry detergent. *Id.,* at 44. He saw it on the floor when he went to help his wife. *Id.*, at 50-51. He described what he saw as a light, faint blue color and could see where her feet went through it. *Id*. at 51.

A Wal-Mart employee, who plaintiff believes was a maintenance worker, stated "I told the housekeeping to clean this up an hour ago." Plaintiff depo. at 108-109. The plaintiff heard him tell the store manager the same thing, but the entire time plaintiff was lying on the floor, she never saw any liquid. *Id.,* at 114-116. Plaintiff's husband heard the same comment made, that an employee told "housekeeping to clean that up an hour ago." K. Marsh depo. at 42, 45. The plaintiff does not remember anyone coming to clean the floor. Plaintiff depo. at 116, 117. Another employee, who may have been a manager, told Keith Marsh that they found evidence of a similar substance in a couple of other aisles as well. K. Marsh depo. at 49-50, 59-60.

When she was helped up from the floor to a wheelchair by her husband, her feet were not slipping and sliding. Plaintiff depo. at 117, 119. However, after she was in the wheelchair someone wiped more liquid off her shoes. *Id.* Her husband saw the liquid on her shoes. K. Marsh depo. at 38.

Neither the plaintiff nor her husband know how the spill got on the floor or how long it had been there. Plaintiff depo. at 122-123; K. Marsh depo. at 46-47. In the statement she gave defendant that evening, she does not mention liquid on the

floor or mention hearing someone say he told someone else to clean it up an hour ago. Plaintiff depo. at 125-126. Although she signed this while sitting in the wheelchair after it was written by someone else, the plaintiff agrees she provided the information on the form. Plaintiff depo. at 185-186, 190; exhibit 1 to plaintiff depo.

The plaintiff fractured her ankle, in the same place it had been previously broken, when she fell. Plaintiff depo. at 147. She also bruised her elbow. *Id*., at 150. Her worst injury from the fall was her lower back. *Id.,* at 151. The plaintiff had a previous fusion at L5-S1 which had to be refused, and L4-L5 had to be fused as well. *Id.,* at 152-153. This was done after June of 2009 when an MRI was done and a doctor told the plaintiff her nerves were pressing against her spine. *Id.,* at 160.

## II. Standards for Evaluating a Summary Judgment Motion

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all

"doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude

the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. Legal Analysis

The defendant argues that under the facts of this case, it is not liable to an invitee for an open and obvious hazard. Defendant's memorandum, at 7. However, the facts of this case establish that the liquid was a light blue color and that neither the plaintiff nor her husband saw it on the floor before the plaintiff fell.

The parties do not dispute that the plaintiff was an invitee of the defendant. "The duty of the owner or occupant of premises to an invitee is to be reasonably sure that he is not inviting another into danger and to exercise ordinary care to render and keep the premises in a reasonably safe condition. Alabama Pattern Jury Instruction 31.01.[1] This has been limited to "hidden defects which are not known to the invitee and would not ordinarily be discovered by him in the exercise of ordinary care." *Ex parte Mountain Top Indoor Flea Market, Inc*., 699 So.2d 158, 161 (Ala.1997). "Storekeepers have a duty to exercise reasonable care in providing and maintaining reasonably safe premises for the use of their customers. The store is not an insurer of the customer's safety but is liable for injury only in the event it negligently fails to use reasonable care in maintaining the premises in a reasonable and safe

---

[1] All references to the Alabama Pattern Jury Instructions are to the Second Edition, and the December 2010 Cumulative Supplement.

condition." APJI 31.01B.  Similarly, a landowner is not liable to invitees for harm caused to them by a condition on the land whose danger is known or obvious to them. *Hartzog v. Compass Bank*, 686 So.2d 325, 326-27 (Ala.Civ.App.1996).

The defendant argues that the liquid on the floor was open and obvious, thus negating any duty defendant had to warn of it.  Defendant's brief (doc. 10), at 7.  Both the plaintiff and her husband have stated under oath that neither of them saw the liquid on the floor.  This creates a question of fact for a jury to determine.

Similarly, whether the defendant had actual or constructive notice of the substance on the floor is a question for the jury.  In order to prevail at trial on a slip and fall case such as this, the plaintiff "must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [Wal-Mart]; or (2) that [Wal-Mart] had actual notice that the substance was on the floor; or (3) that [Wal-Mart] was delinquent in not discovering and removing the substance." *Maddox By and Through Maddox v. K-Mart Corp.*, 565 So.2d 14, 16 (Ala.1990).   See also *Arnold v. Wal-Mart Stores, Inc.*,  2009 WL 4827389, 4 (M.D.Ala.2009); *Williams v. Bruno's, Inc.*, 632 So.2d 19 (Ala.1993).

As with the issue of whether the spill was "open and obvious," the only evidence before the court on the issue of whether the defendant had notice of the spill are the statements of plaintiff and her husband that a store employee told another

8

employee to clean up the spill "an hour ago." Summary judgment is therefore due to be denied as to plaintiff's negligence claim.

With regard to plaintiff's claim of wantonness, the defendant again argues it can have no liability because the hazard was open and obvious. Wantonness is "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others." Ala.Code § 6-11-20(b)(3) (1975). "'Wantonness' has been defined ... as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala.1994). To constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone. *Joseph v. Staggs*, 519 So.2d 952, 954 (Ala.1988); see also *Arnold v. Wal-Mart*, 2009 WL 4827389 *6 (M.D.Ala.2009) (stating that the record must establish that defendant actually knew the substance was there and consciously failed to act while aware that injury would likely or probably result); *Berry v. Fife*, 590 So.2d 884, 885 (Ala.1991) (defining "conscious').

Given the plaintiff's testimony that she heard defendant employees commenting that the liquid was on other aisles and that instructions had been given to clean the spill previously, the questions of whether defendant had knowledge of

the spill and whether the defendant consciously failed to act remain for the jury to determine.

## IV. Conclusion

In consideration of the foregoing, the Court shall **DENY** the defendant's motion for summary judgment as genuine issues of material fact remain in the case.

**DONE** and **ORDERED** this the 2nd day of February, 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE